UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JEREMIAH SIMPSON,

                       Plaintiff,                   MEMORANDUM
                                                                  OPINION AND ORDER

    - against-

                                                                      CV 09-2334 (ETB)

MARY O'SULLIVAN and HENRY
SCHMITZ,

                       Defendants.
------------------------------------------------------------------X

       Plaintiff commenced this action on June 3, 2009, alleging that defendants violated his Fifth Amendment due process rights by: (1) terminating his volunteer position at the New York Veterans Affairs Medical Center in Northport, New York ("VA Medical Center"); (2) removing him from his office space at the VA Medical Center; and (3) improperly restricting his right to receive veterans' benefits. Plaintiff amended his Complaint on April 27, 2010.

       By Memorandum and Order dated November 2, 2010, Judge Seybert - the district judge assigned to this action at that time - granted defendants' motion to dismiss the Amended Complaint without prejudice. Thereafter, plaintiff moved to file a Second Amended Complaint, which was granted by Memorandum and Order of Judge Seybert dated June 22, 2011. However, Judge Seybert's decision only permitted plaintiff to file a Second Amended Complaint with respect to his claim that defendants improperly restricted his right to receive veterans' benefits. (Mem. & Order of Seybert, J. dated June 22, 2011, 5-8.) The June 22, 2011 decision clarified that, although omitted from the November 2, 2010 decision, plaintiff's claims concerning the loss of his volunteer position and office space were intended to be dismissed with prejudice. (Id. at 4-

5.) Accordingly, only plaintiff's claim for improper restriction of veterans' benefits remains and is the only claim addressed herein.

Before the Court is defendants' motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes defendants' motion. For the following reasons, defendants' motion is granted and the Second Amended Complaint is dismissed in its entirety.

FACTS

Plaintiff, Jeremiah Simpson, is a United States Armed Forces veteran who represented an organization entitled the Veterans of the Viet Nam War, Inc. at the VA Medical Center in Northport, New York. (Def. R. 56.1 Statement ("Def. 56.1") ¶¶ 1-2; Pl. R. 56.1 Statement ("Pl. 56.1") ¶¶ 1-2.) In this capacity, plaintiff assisted veterans with completing and processing their claims submitted to the Department of Veterans Affairs (the "VA"). (Def. 56.1 ¶ 3; Pl. 56.1 ¶ 3.)

Defendant Mary O'Sullivan ("O'Sullivan") was employed by the VA for approximately twenty-seven years, prior to retiring in January 2009. (Def. 56.1 ¶ 4; Pl. 56.1 ¶ 4.) For approximately fifteen years prior to her retirement, O'Sullivan was the Chief of Volunteer Services at the VA Medical Center, wherein she was responsible for handling donations received by the VA Medical Center, acted as a liaison between the VA Medical Center and various veterans' services, and placed volunteers at the VA Medical Center. (Def. 56.1 ¶¶ 5-6; Pl. 56.1 ¶¶ 5-6.) O'Sullivan did not supervise plaintiff's work; rather, plaintiff was supervised by the organization he represented at the VA Medical Center - the Veterans of the Viet Nam War, Inc. (Def. 56.1 ¶¶ 7-8; Pl. 56.1 ¶¶ 7-8.)

Defendant Henry Schemitz, incorrectly sued herein as "Henry Schmitz," was employed

by the VA Medical Center for approximately thirty-eight years as the Chief of VA police, prior to retiring in July 2010. (Def. 56.1 ¶¶ 9-10; Pl. 56.1 ¶¶ 9-10.) As the Chief of VA police, Schemitz was responsible for overall security at the VA Medical Center, as well as other VA properties located within New York. (Def. 56.1 ¶ 11; Pl. 56.1 ¶ 11.) As part of his duties, Schemitz assisted with VA investigations at the national level and was also responsible for overseeing security measures and investigations conducted by his subordinates at the VA Medical Center. (Def. 56.1 ¶ 11; Pl. 56.1 ¶ 11.) While employed as the Chief of VA police, Schemitz supervised approximately forty individuals, both police and civilian staff; however, the level of his personal involvement in any given matter varied depending on the needs of the case. (Def. 56.1 ¶ 11; Pl. 56.1 ¶ 11.) Schemitz did not supervise plaintiff's work. (Def. 56.1 ¶ 12; Pl. 56.1 ¶ 12.)

At some point prior to July 2006, a New York state veterans counselor, Cynthia Falzone ("Falzone"), advised O'Sullivan that a female veteran approached her and alleged that plaintiff had engaged in inappropriate behavior with the female veteran. (Def. 56.1 ¶ 24; Pl. 56.1 ¶ 24.) O'Sullivan advised Falzone to immediately discuss the matter with the VA police. (Def. 56.1 ¶ 25; Pl. 56.1 ¶ 25.) In early June 2006, the VA police learned that a female veteran had accused plaintiff of forcefully and physically touching her in a sexual manner and of propositioning her for sexual favors in exchange for his assistance with her veteran's benefit claim. (Def. 56.1 ¶ 26; Pl. 56.1 ¶ 26.) The VA police subsequently conducted an investigation into the allegations, including interviewing the female complainant,[1] as well as other individuals, and conducting a

---

[1] When interviewed, the female complainant advised the VA police that plaintiff propositioned her for sexual favors in exchange for assistance with processing her veteran's benefit claim. The female complainant alleged that plaintiff stated that if she did not comply with his request, her benefit claim would be adversely affected. The female complainant further alleged that plaintiff groped her and attempted to force himself upon her at his home. (Def. 56.1

background check of plaintiff. (Def. 56.1 ¶ 27; Pl. 56.1 ¶ 27.)

Upon conducting plaintiff's background check, the VA police discovered that plaintiff had a criminal history. (Def. 56.1 ¶ 32; Pl. 56.1 ¶ 32.) Specifically, in 1982, plaintiff was arrested and charged with assault with a deadly weapon stemming from a fight with members of the Pagans motorcycle club. (Def. 56.1 ¶ 33; Pl. 56.1 ¶ 33.) Plaintiff pled guilty to assault in connection with this offense. (Def. 56.1 ¶ 33; Pl. 56.1 ¶ 33.) In 1984, plaintiff was arrested and charged with criminal sale of a controlled substance stemming from his possession of valium. (Def. 56.1 ¶ 34; Pl. 56.1 ¶ 34.) Plaintiff pled guilty to this offense as well. (Def. 56.1 ¶ 34; Pl. 56.1 ¶ 34.) In 1985, plaintiff was arrested and charged with driving while intoxicated; however, the charges were subsequently dismissed. (Def. 56.1 ¶ 35; Pl. 56.1 ¶ 35.) Finally, in 1986, plaintiff was arrested and charged with various rape, kidnapping, forcible compulsion, burglary and assault offenses stemming from an incident that occurred between plaintiff and his now ex-wife. (Def. 56.1 ¶ 36; Pl. 56.1 ¶ 36.) Plaintiff was found not guilty by reason of mental illness and diagnosed with schizophrenia.[2] (Def. 56.1 ¶ 36; Pl. 56.1 ¶ 36.) Plaintiff spent a number of years in an inpatient treatment program and was thereafter monitored in an outpatient program. (Def. 56.1 ¶ 36; Pl. 56.1 ¶ 36.)

At the request of the VA police, O'Sullivan informed plaintiff that he was the subject of an on-going investigation and that, during the investigation, he would not be permitted to perform any duties for veterans at the VA Medical Center. (Def. 56.1 ¶ 28; Pl. 56.1 ¶ 28.) The

---

¶ 31; Pl. 56.1 ¶ 31.)

[2] Despite being diagnosed with schizophrenia, plaintiff has not participated in any mental health treatment at the VA Medical Center since 1992. (Def. 56.1 ¶ 41; Pl. 56.1 ¶ 41.)

VA police investigation was conducted primarily by Detective Paul Romano under Schemitz's supervision. (Def. 56.1 ¶ 30; Pl. 56.1 ¶ 30.) However, Schemitz personally participated in interviewing the female complainant. (Def. 56.1 ¶ 30; Pl. 56.1 ¶ 30.) Although the complaint against plaintiff was referred to the United States Attorney's Office, they declined to prosecute "primarily on jurisdictional grounds as the conduct described by the victim did not occur on federal property." (Pl. Ex. 11.)

In or around September 2007, the VA Medical Center's Disruptive/Disturbed Behavior Committee (the "DBC")[3] placed restrictions on plaintiff's use of the VA Medical Center, which required that he be escorted by the VA police while he visited the facility for any appointment or emergent clinical need.[4] (Def. 56.1 ¶ 38; Pl. 56.1 ¶ 38.) A Patient Record Flag[5] was entered for plaintiff at this time, indicating the conditions imposed by the DBC for providing continued care to plaintiff and a clinical note was entered outlining the clinical justification and need for such conditions. (Def. 56.1 ¶ 38; Pl. 56.1 ¶ 38.)

---

[3] The DBC is responsible for reviewing and making recommendations concerning prevention and management of disruptive behavior at the VA Medical Center. (Def. 56.1 ¶ 16; Pl. 56.1 ¶ 16.) This oversight includes the Patient Record Flag Program and all aspects of the VA Medical Center Workplace Violence Prevention Programs. (Def. 56.1 ¶ 16; Pl. 56.1 ¶ 16.) Dr. Michael Marino, the VA Medical Center's Chief of Psychology Service, is the Chairperson of the DBC. (Def. 56.1 ¶ 13; Pl. 56.1 ¶ 13.)

[4] Over the past thirty years, the DBC has imposed a VA police escort restriction upon numerous VA patients who have posed significant safety concerns. (Def. 56.1 ¶ 22; Pl. 56.1 ¶ 22.) At any time, the VA Medical Center may have between ten to fourteen patients with such a restriction. (Def. 56.1 ¶ 22; Pl. 56.1 ¶ 22.)

[5] The Patient Record Flag Program outlines and communicates to other staff throughout the VA Medical Center the conditions imposed and any associated restrictions on a VA patient who is viewed as a potential threat to VA staff and/or other patients. (Def. 56.1 ¶ 19; Pl. 56.1 ¶ 19.) Once a Behavioral Red Flag is entered, it is viewable on a national basis. (Def. 56.1 ¶ 19; Pl. 56.1 ¶ 19.)

Plaintiff's Second Amended Complaint alleges that pursuant to the Supreme Court's holding in Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), defendants have violated his Fifth Amendment due process rights by obstructing his access to free medical and dental services at the VA Medical Center.[6] According to plaintiff, as a result of the conditions imposed upon his continued care - e.g., requiring him to be handcuffed[7] and escorted by the VA police while on the grounds of the VA Medical Center - plaintiff cannot "bear the humiliation of being treated as a criminal" and therefore "discontinued his practice of availing himself of his right to needed free medical and dental services and medication." (2d Am. Compl. ¶¶ 22, 24-25.) Defendants seek summary judgment on the grounds that plaintiff has offered no evidence to support his claim that defendants were personally involved in the alleged Constitutional violation at issue herein.

DISCUSSION

I. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to establish the lack of any factual issues. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The very language of this standard reveals that an otherwise

---

[6] As stated supra, Judge Seybert dismissed plaintiff's claims for loss of his office space and volunteer position with prejudice.

[7] Although plaintiff alleges that he was required to be handcuffed in addition to the security escort, there is nothing in the documentary evidence submitted to support this claim. Moreover, defendants assert that such a requirement was never imposed on plaintiff.

properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Rather, the requirement is that there be no "genuine issue of material fact." Id. at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts." Id. at 586. In addition, the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248.

When considering a motion for summary judgment, the district court "must also be 'mindful of the underlying standards and burdens of proof' . . . because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." SEC v. Meltzer, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006) (quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988)) (internal citations omitted). "Where the non-moving party would bear the ultimate burden of proof on an issue at trial, the burden on the moving party is satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim." Meltzer, 440 F. Supp. 2d at 187.

Summary judgment should not be regarded as a procedural shortcut, but rather as an integral part of the Federal Rules of Civil Procedure, which are designed to "secure the just, speedy and inexpensive determination of every action." Celotex, 477 U.S. at 327. Rule 56 must

be "construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those persons "opposing such claims and defenses to demonstrate, . . . prior to trial, that the claims and defenses have no factual basis." Id. By its terms, Rule 56 does not require that a trial judge make any findings of fact. See Anderson, 477 U.S. at 250. The only inquiry to be performed is the determination of whether there is a need for trial. See id. The court's principal analysis on a motion for summary judgment is to ascertain whether there are any "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id.

II. Plaintiff's Bivens Claim

In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (quoting Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001)); see also Ke v. Morton, No. 10 Civ. 8671, 2012 U.S. Dist. LEXIS 141848, at *12 (S.D.N.Y. Sept. 28, 2012) ("[W]here an individual has been deprived of a constitutional right by a federal agent acting under color of federal authority, the individual may bring a so-called Bivens action for damages against that federal agent in an individual capacity . . . ."). "The Bivens cause of action 'is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983.'" Ke, 2012 U.S. Dist. LEXIS 141848, at *12 (quoting Iqbal, 566 U.S. at 677).

The elements of a Bivens claim are: "(1) 'that a defendant acted under color of federal

law' (2) 'to deprive plaintiff of a constitutional right.'" Megna v. Food & Drug Administration, No. 08-CV-1435, 2009 U.S. Dist. LEXIS 21359, at *20 (quoting Tavarez v. Reno, 54 F.3d 109. 110 (2d Cir. 1995)). For a Bivens defendant to be found liable, he or she "must have been 'personally involved in the claimed constitutional violation.'" Ke, 2012 U.S. Dist. LEXIS 141848, at *12 (quoting Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009)). The doctrine of respondeat superior is inapplicable to a Bivens claim, see Iqbal, 556 U.S. at 676, and, accordingly, "[a] supervisory official cannot be liable solely on account of the acts or omissions of his or her subordinates." Ke, 2012 U.S. Dist. LEXIS 141848, at *13 (citations omitted). Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.

In the within action, plaintiff alleges that the imposition of a security escort while he is on the grounds of the VA Medical Center violates his constitutional rights by constructively denying him his right to receive medical benefits.[8] However, plaintiff has offered no evidence from which a reasonable factfinder could conclude that the two individual defendants, O'Sullivan and Schemitz, played any role in the decision to implement the security escort. Rather, it is undisputed that neither O'Sullivan nor Schemitz supervised the plaintiff in any way while he volunteered at the VA Medical Center. It is further undisputed that it is the DBC, of which Dr. Michael Marino is the Chairperson, that is responsible for implementing security restrictions such as the one imposed on plaintiff. (Marino Decl. ¶ 14 and Ex. A, annexed thereto.) However, plaintiff has chosen not to name Dr. Marino or the DBC in this action.

---

[8] The Court finds it unnecessary to address plaintiff's issue of whether the security escort constitutes an unconstitutional denial of Veteran's benefits under the circumstances here involving allegations of sexual harassment and the uncovering of a prior criminal record.

Despite Judge Seybert's prior order dismissing plaintiff's claims for loss of his volunteer position and loss of his office space, with prejudice, plaintiff's affidavit in opposition to the within motion reiterates over and over how defendant O'Sullivan caused him to lose his volunteer position at the VA Medical Center. Such allegations are simply not at issue in this action any more. Plaintiff's affidavit does not address the defendants' participation in the sole claim that is still pending here - his denial of medical benefits - other than to state that the security restriction that was placed on him was "based in part, upon 'sexually inappropriate behavior towards a woman while at the Northport VAMC," which plaintiff conclusorily asserts is an allegation made by defendants. (Pl. Aff. in Opp'n ¶ 48.) However, the documentary evidence submitted by defendants clearly demonstrates that the allegations of plaintiff's inappropriate behavior came from the complainant herself, as well as the counselor she complained to, Cynthia Falzone. (Schemitz Decl., Ex. A-C.) Plaintiff has not offered one shred of evidence to support his claim that defendants O'Sullivan and Schemitz violated his constitutional rights by being personally involved in the decision to impose a security escort on him while on the grounds of the VA Medical Center.[9]

Plaintiff attempts to create an issue of fact by offering the affidavit of Frank Frumento ("Frumento"), the Commander of Post 1635 of the American Legion, wherein Frumento states that O'Sullivan is, in effect, lying in her declaration submitted in connection with defendants' motion for summary judgment wherein she stated that she did not participate in the investigation

---

[9] Plaintiff's affidavit in opposition also contains various unsubstantiated allegations that O'Sullivan reported him to the Internal Revenue Service and displayed an overall "hostility" towards him. (Pl. Aff. in Opp'n ¶¶ 9-11, 19.) Plaintiff offers nothing to support these allegations; nor do they appear to be relevant to the sole cause of action at issue herein.

of plaintiff. (Frumento Aff. ¶¶ 6-7.) Frumento's affidavit also states that defendant Schemitz made "grossly inaccurate assertions" about plaintiff to Frumento, which indicated to Frumento that Schemtiz "was conscious of having engaged in wrongdoing with respect to his dealings with plaintiff and participated in causing . . . plaintiff to be excluded from the V.A. grounds unless he was accompanied by security personnel." (Id. ¶ 11.)

Defendants take issue with the submission of Frumento's affidavit because Frumento was "never identified by plaintiff during discovery as a witness with knowledge of facts in this case and, as a result, Defendants could not depose him or discover evidence to challenge the veracity of the claims he makes." (Def. Reply Letter dated Sept. 27, 2012, 2.) Accordingly, defendants assert that Frumento's affidavit should be stricken.

While plaintiff may not have formally identified Frumento as a witness, a review of plaintiff's deposition testimony reveals that plaintiff clearly identified Frumento as a person who has knowledge of the facts alleged in his Complaint during his deposition taken by defendants on February 28, 2012. (Pl. Dep. 48-49.) When asked by defendants' counsel what information Frumento had in connection with this action, plaintiff replied that Frumento "had one-to-one meetings with Mary O'Sullivan" in September 2007 and went on to explain his understanding of what occurred during those meetings. (Pl. Dep. 50-51.) Accordingly, defendants' assertions that they have been blindsided by Frumento's affidavit are disingenuous.

Notwithstanding the foregoing, Frumento's affidavit, which contains nothing more than conclusory assertions, is not enough to create a triable issue of fact for plaintiff. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) ("[U]nsupported allegations do not create a material issue of fact."); Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996) ("[M]ere

conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment."); Kennedy v. N.Y. Presbyterian Hosp., No. 09 Civ. 6256, 2011 U.S. Dist. LEXIS 73622, at *7 (S.D.N.Y. June 15, 2011) ("[M]ere conclusory allegations will not suffice to overcome summary judgment.").

For the foregoing reasons, the Court finds that plaintiff has failed to raise a genuine issue of fact to defeat defendants' motion for summary judgment with respect to plaintiff's Bivens claim. There is simply nothing in the evidence offered from which a reasonable factfinder could conclude that defendants O'Sullivan and Schemitz played any role in the decision to impose a security escort on plaintiff while on the grounds of the VA Medical Center. Thus, defendants are entitled to judgment as a matter of law that they did not violate plaintiff's constitutional rights and defendants' motion for summary judgment is granted.[10]

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted and plaintiff's Second Amended Complaint is dismissed in its entirety. The Clerk of the Court is directed to enter judgment accordingly and to mark this case closed.

---

[10] Because the Court finds that defendants did not violate plaintiff's constitutional rights, there is no need to reach the issue of whether defendants are entitled to qualified immunity.

**SO ORDERED:**

Dated: Central Islip, New York
       March 12, 2013

                                              /s/ E. Thomas Boyle
                                              E. THOMAS BOYLE
                                              United States Magistrate Judge